IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
U.S. DISTRICT COURT

2007 JUN 28 AM 11: 15

TX EASTERN-MARSHALL

BY_____

| | |
|---|---|
| AMERANTH, INC. § | |
| § | |
| Plaintiff, § | |
| § | Case No. 2-07CV-271 |
| v. § | |
| § | JURY TWICE |
| MENUSOFT SYSTEMS CORPORATION, § | |
| and CASH REGISTER SALES & SERVICE § | |
| OF HOUSTON, INC. (dba CRS TEXAS), § | |
| § | |
| Defendants. § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Ameranth, Inc. ("Ameranth"), for its Complaint against Menusoft Systems Corporation ("Menusoft") and Cash Register Sales & Service of Houston, Inc. (dba CRS Texas) ("CRS"), avers as follows:

### JURISDICTION AND VENUE

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 271, 281-285.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3. This Court has personal jurisdiction over defendants Menusoft and CRS, as the defendants have committed acts of patent infringement in this Judicial District including, inter alia, making, using, offering for sale, and/or selling infringing products and/or components of infringing systems in this Judicial District.

1

4.    On information and belief, defendants Menusoft and CRS have knowingly and actively infringed, contributed to infringement and/or have induced others to commit such acts of infringement in this Judicial District.

5    Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b)

## PARTIES

6.    Plaintiff Ameranth is a Delaware corporation having a principal place of business at 5375 Mira Sorrento Place, Suite 150, San Diego, California 92121. Ameranth manufactures and sells, inter alia, restaurant and food service information technology solutions under the trademark 21st Century Restaurant ("21CR") comprising the synchronization of hospitality information between fixed, wireless and/or internet applications.

7.    Defendant Menusoft is, on information and belief, a Virginia corporation having a principal place of business at 7370 Steel Mill Drive, Springfield, Virginia 22150. On information and belief, Defendant Menusoft makes, uses, sells and/or offers for sale restaurant and foodservice information technology products, software, components and/or systems within this Judicial District including products, software, components and/or systems comprising fixed Point of Sale ("POS"), wireless POS and/or internet hospitality aspects.

8.    Defendant CRS is, on information and belief, a Texas corporation having a principal place of business at 8303 Westglen, Houston, Texas 77063, and other offices throughout Texas. On information and belief, Defendant CRS makes, uses, sells and/or offers for sale restaurant and foodservice information technology products, software, components and/or systems within this Judicial District including products, software, components and/or systems comprising fixed POS, wireless POS and/or internet hospitality aspects.

9.     On information and belief, defendants Menusoft and CRS, acting either alone or in concert, have engaged in (a) the offer for sale and sale of restaurant and food service technology products and/or components in the United States, including this Judicial District, including products, software, components and/or systems comprising fixed POS, wireless POS and/or internet hospitality aspects, (b) the installation and maintenance of said products, software, components and/or systems in restaurant and food service information technology systems in the United States, including this Judicial District and/or (c) the use of restaurant and food service information technology systems comprising said products, software, components and/or systems in the United States, including this Judicial District.

## BACKGROUND AND GENERAL ALLEGATIONS

10.     Ameranth was established in 1996 to develop and provide innovative information technology solutions for the hospitality industry. From its inception, Ameranth has been recognized as a technology leader in the provision of wireless and internet-based systems and services to, inter alia, restaurants, hotels, casinos, cruise ships and sports venues. Ameranth's inventions enable, in relevant part, generation and synchronization of menus, including but not limited to restaurant menus, across fixed, wireless and/or internet platforms as well as synchronization of hospitality information across fixed, wireless and internet platforms

11.     Ameranth began development of the inventions leading to the patents-in-suit at least as early as 1998 at a time when the then-available wireless and internet hospitality offerings were extremely limited in functionality, were not synchronized and did not provide an integrated system-wide solution to the pervasive ordering, reservations and information management needs of the hospitality industry. Ameranth conceived and developed its breakthrough inventions to provide systemic solutions directed to meeting these industry needs. Ameranth has expended

considerable effort and resources in inventing, developing and marketing its inventions and protecting its rights therein.

12. The wireless handheld devices used in the hospitality market prior to Ameranth's revolutionary developments were custom devices with very limited display, memory, processing and communication data rate capabilities. These devices ran on non-standard operating systems, used non-standard display sizes and used non-standard wireless networks with slow data rates. As a result, the prior wireless handheld devices had very limited menus, user interfaces and functionality. For example, these devices did not allow for automatic menu generation for a wireless handheld device from a fixed POS database or VGA/XVGA sized menu/GUI. And with color screens not yet available or practical on handheld devices at the time of Ameranth's invention (due to cost and battery life limitations), the prior handheld devices could not replicate the user interface of fixed POS systems. Menus on these prior handheld devices were thus very limited, e.g., without detailed "modifiers" and "sub modifiers" and/or menu data had to be entered into the overall system twice (once for the handheld device and separately for the fixed POS system). Due to the limited capability of displays and memories available at the time, dual operator training and support requirements existed as well, limiting operational practicality to venues having very specific needs for mobile ordering, e.g., large sports stadiums, pool/beach areas, etc.

13. As an example of the crude handheld products in use prior to Ameranth's revolutionary developments, due to the monochrome and 'text based' displays then available, several of these prior products required handheld-equipped waiters to memorize that specific numbers (called "PLUs" in the industry jargon) meant specific menu items, e.g., #101 might be a "steak – well done." This was an obvious impediment to broad adoption and usage. Moreover,

4

prior to Ameranth's patented developments, there was no straightforward and efficient way to synchronously and automatically update handheld menus for "time of day" changes, e.g., lunch to dinner, and to thus maintain consistency with the fixed POS systems (on which such updates were made automatically). The fixed and handheld POS would thus become "out of sync" without constant and attentive manual updating of the handheld devices. The prior devices also had no capability for "pivot seating" (to link specific orders to specific guests seated at a particular table) nor the ability to selectively print receipts at the printer located nearest to the server/table. Further, when a "daily special" menu item ran out, e.g. "prime rib," there was no automatic way to synchronously update the handheld device to remove the special item from the display options seen by the server on the handheld device, i.e., "item availability." Also, when prices were changed in the main (fixed) POS system, they had to be manually changed in the handheld database as well. And none of the prior handheld products provided links to wireless paging devices, valet parking stations and mobile printers and none had handwriting or voice recognition functionality. Moreover, none of the prior hospitality POS products had integrated synchronization data links to both wireless devices and the internet to ensure consistency between fixed, wireless and/or web platforms so that distributed interactions were all seamlessly linked and integrated.

14. Ameranth's innovative solutions solved the problems and addressed the limitations of prior approaches by taking a quantum leap away from the limited functionality of prior "custom" and limited functionality systems. Ameranth's solutions provided a system-wide approach which worked across all platforms and devices comprising a hospitality information technology system. Ameranth conceived a solution which took advantage of several non-interconnected industry standards and trends that were emerging at the time. Ameranth's unified

approach to hospitality information management resulted in the first hospitality information technology system which addressed all the limitations of prior non-unified systems. Ameranth's breakthrough solutions work by synchronizing menus and hospitality data between a fixed POS system, wireless devices and/or the internet. Ameranth's radical departure from the approach of prior non-synchronized systems for the first time enabled hospitality enterprises to operate based on a consistent, single set of data across an entire fixed/wireless/web enterprise and thus provided efficiencies and capabilities previously not thought possible.

15.  Ameranth's pioneering inventions have been widely adopted and are thus now essential to the modern wireless hospitality enterprise of the 21st Century. Ameranth's solutions have been adopted by many in the hospitality industry, including Menusoft, since Ameranth's first public disclosure of its now-patented technology at the Food Service and Technology show (FSTEC) in Atlanta, GA from November 13-16, 1998. Shortly after the November 1998 FSTEC show, during 1999 and 2000, many of the leading technology and hospitality POS companies selected Ameranth and its 21CR technology to integrate with and augment their own offerings. Menusoft, however, was not among the POS companies who sought to partner with Ameranth. Rather, both Graham Granger, CEO of Menusoft, and Kay Branson, VP of Marketing/Sales for Menusoft, personally visited Ameranth's booth at several trade shows in 1999 and were given detailed demonstrations of Ameranth's 21CR technology. Two years later, Menusoft then deployed a new version of its Digital Dining POS product having many of the features of Ameranth's 21CR technology.

16.  The adoption of Ameranth's technology by industry leaders and the wide acclaim received by Ameranth for its technological innovations are just some of the many confirmations of the breakthrough aspects of Ameranth's inventions. Ameranth has received twelve different

technology awards (three with 'end customer' partners) and has been widely recognized as the hospitality wireless technology leader by almost all major national and hospitality print publications, e.g., The Wall Street Journal, New York Times, USA Today and many others. Ameranth was personally nominated by Bill Gates, the Founder and Chairman of Microsoft, for the prestigious Computerworld award that Ameranth received in 2001. In his nomination, Mr. Gates described Ameranth as "one of the leading pioneers of information technology for the betterment of mankind." The award was based on Ameranth's innovative synchronization technology. Subsequently, the United States Patent and Trademark Office granted Ameranth its three currently-issued patents which are the basis for this lawsuit. Ameranth has issued press releases announcing these patent grants on business wires, on its web sites and at numerous trade shows attended by Menusoft since the first patent issued in 2002.

17. Ameranth sought to engage Menusoft in licensing negotiations by letter dated January 16, 2007 from its attorney John W. Osborne to Ms. Kay Branson, Director of Marketing for Menusoft. Ameranth indicated a willingness to license its patented technology on commercially reasonable terms. Ameranth asked for a response by February 9, 2007. No response was received. Ameranth sent a second letter on February 28, 2007 asking for a response by March 22, 2007. No response was received. Ameranth sent yet a third letter on April 4, 2007 asking for a response by May 1, 2007. Again, no response was received by Ameranth. Menusoft's flagrant violation of Ameranth's patent rights and refusal to enter into a commercially reasonable licensing arrangement necessitated the present lawsuit.

## COUNT I

### Patent Infringement (U.S. Pat. No. 6,384,850)
### (35 U.S.C. § 271)

18.   Plaintiff reiterates and incorporates the allegations set forth in paragraphs 1-17 above as if fully set forth herein.

19.   On May 7, 2002, United States Patent No. 6,384,850 entitled "Information Management and Synchronous Communications System with Menu Generation" ("the '850 patent") (attached hereto as Exhibit A) was duly and legally issued by the United States Patent & Trademark Office.

20.   Plaintiff Ameranth is the lawful owner by assignment of all right, title and interest in and to the '850 patent.

21.   On information and belief, defendant Menusoft has infringed the '850 patent in violation of 35 U.S.C. §271(a) by making, using, offering for sale and/or selling infringing hospitality systems in greater than one thousand different customer deployments including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

22.   On information and belief, defendant Menusoft has actively induced others to infringe the '850 patent in violation of 35 U.S.C. §271(b) by knowingly encouraging, aiding and abetting distributors and/or restaurant and food service users, including but not limited to CRS and customers of CRS and/or Menusoft, to make and/or use infringing hospitality systems including but not limited to systems including fixed POS, wireless POS, and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

23.   On information and belief, defendant Menusoft has contributorily infringed the '850 patent in violation of 35 U.S.C. §271(c) by offering to sell and/or selling components of

8

systems on which claims of the '850 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '850 patent, to distributors and/or restaurant and foodservice users, including but not limited to CRS and customers of CRS and/or Menusoft for use in infringing systems including but not limited to systems including wireless POS, fixed POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

24. On information and belief, defendant CRS has infringed the '850 patent in violation of 35 U.S.C. §271(a) by making, using, offering for sale and/or selling infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

25. On information and belief, defendant CRS has actively induced others to infringe the '850 patent in violation of 35 U.S.C. §271(b) by knowingly encouraging, aiding and abetting restaurant and foodservice users to use infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

26. On information and belief, defendant CRS has contributorily infringed the '850 patent in violation of 35 U.S.C. §271(c) by offering to sell and/or selling components of systems on which claims of the '850 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '850 patent, to restaurant and foodservice users for use in infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

27. On information and belief, defendants' infringement has been in willful disregard of Ameranth's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §285.

28. The aforesaid infringing activity has caused damage to plaintiff, including loss of profits from sales it would have made but for the infringements. Unless enjoined, the aforesaid infringing activity will continue and cause irreparable injury to plaintiff for which there is no adequate remedy at law.

## COUNT II

### Patent Infringement (U.S. Pat. No. 6,871,325)
### (35 U.S.C. § 271)

29. Plaintiff reiterates and incorporates the allegations set forth in paragraphs 1-28 above as if fully set forth herein.

30. On March 22, 2005, United States Patent No. 6,871,325 entitled "Information Management and Synchronous Communications System with Menu Generation" ("the '325 patent") (attached hereto as Exhibit B) was duly and legally issued by the United States Patent & Trademark Office.

31. Plaintiff Ameranth is the lawful owner by assignment of all right, title and interest in and to the '325 patent.

32. On information and belief, defendant Menusoft has infringed the '325 patent in violation of 35 U.S.C. §271(a) by making, using, offering for sale and/or selling infringing hospitality systems in greater than one thousand different customer deployments including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

33. On information and belief, defendant Menusoft has actively induced others to infringe the '325 patent in violation of 35 U.S.C. §271(b) by knowingly encouraging, aiding and abetting distributors and/or restaurant and food service users, including but not limited to CRS and customers of CRS and/or Menusoft, to make and/or use infringing hospitality systems including but not limited to systems including wireless POS, fixed POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

34. On information and belief, defendant Menusoft has contributorily infringed the '325 patent in violation of 35 U.S.C. §271(c) by offering to sell and/or selling components of systems on which claims of the '325 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '325 patent, to distributors and/or to restaurant and foodservice users, including but not limited to CRS and customers of CRS and/or Menusoft for use in infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

35. On information and belief, defendant CRS has infringed the '325 patent in violation of 35 U.S.C. §271(a) by making, using, offering for sale and/or selling infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

36. On information and belief, defendant CRS has actively induced others to infringe the '325 patent in violation of 35 U.S.C. §271(b) by knowingly encouraging, aiding and abetting restaurant and foodservice users to use infringing systems including but not limited to systems

including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

37.     On information and belief, defendant CRS has contributorily infringed the '325 patent in violation of 35 U.S.C. §271(c) by offering to sell and/or selling components of systems on which claims of the '325 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '325 patent, to restaurant and foodservice users for use in infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

38.     On information and belief, defendants' infringement has been in willful disregard of Ameranth's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §285.

39.     The aforesaid infringing activity has caused damage to plaintiff, including loss of profits from sales it would have made but for the infringements. Unless enjoined, the aforesaid infringing activity will continue and cause irreparable injury to plaintiff for which there is no adequate remedy at law.

## COUNT III

### Patent Infringement (U.S. Pat. No. 6,982,733)
### (35 U.S.C. § 271)

40.     Plaintiff reiterates and incorporates the allegations set forth in paragraphs 1-39 above as if fully set forth herein.

41.     On January 3, 2006, United States Patent No. 6,982,733 entitled "Information Management and Synchronous Communications System with Menu Generation, and Handwriting

and Voice Modification of Orders" ("the '733 patent") (attached hereto as Exhibit C) was duly and legally issued by the United States Patent & Trademark Office.

42. Plaintiff Ameranth is the lawful owner by assignment of all right, title and interest in and to the '733 patent.

43. On information and belief, defendant Menusoft has infringed the '733 patent in violation of 35 U.S.C. §271(a) by making, using, offering for sale and/or selling infringing hospitality systems in greater than one thousand different customer deployments including but not limited to systems including fixed POS, wireless POS /or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

44. On information and belief, defendant Menusoft has actively induced others to infringe the '733 patent in violation of 35 U.S.C. §271(b) by knowingly encouraging, aiding and abetting distributors and/or restaurant and food service users, including but not limited to CRS and customers of CRS and/or Menusoft, to make and/or use infringing hospitality systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

45. On information and belief, defendant Menusoft has contributorily infringed the '733 patent in violation of 35 U.S.C. §271(c) by offering to sell and/or selling components of systems on which claims of the '733 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '733 patent, to distributors and/or restaurant and foodservice users, including but not limited to CRS and customers of CRS and/or Menusoft, for use in infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

46. On information and belief, defendant CRS has infringed the '733 patent in violation of 35 U.S.C. §271(a) by making, using, offering for sale and selling infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

47. On information and belief, defendant CRS has actively induced others to infringe the '733 patent in violation of 35 U.S.C. §271(b) by knowingly encouraging, aiding and abetting restaurant and foodservice users to use infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

48. On information and belief, defendant CRS has contributorily infringed the '733 patent in violation of 35 U.S.C. §271(c) by offering to sell and/or selling components of systems on which claims of the '733 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '733 patent, to restaurant and foodservice users for use in infringing systems including but not limited to systems including fixed POS, wireless POS and/or internet aspects under the Digital Dining trademark in the U.S. without authority or license from Ameranth.

49. On information and belief, defendants' infringement has been in willful disregard of Ameranth's patent rights, making this an exceptional case within the meaning of 35 U.S.C. §285.

50. The aforesaid infringing activity has caused damage to plaintiff, including loss of profits from sales it would have made but for the infringements. Unless enjoined, the aforesaid infringing activity will continue and cause irreparable injury to plaintiff for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays for judgment and an order against defendants:

A. Adjudging that the manufacture, use, offer for sale, sale and/or importation of defendants' Digital Dining products and/or software infringes the '850, '325 and '733 patents;

B. Adjudging that each of defendants has infringed, actively induced others to infringe and/or contributorily infringed the '850, '325 and '733 patents;

C. Adjudging that each defendant's infringement of the '850, '325 and '733 patents has been willful;

D. Enjoining each defendant, its officers, directors, employees, attorneys, agents, representatives, parents, subsidiaries, affiliates and all other persons acting in concert, participation or privity with it, and its successors and assigns, from infringing, contributorily infringing and/or inducing others to infringe the '850, '325 and '733 patents;

E. Awarding plaintiff the damages it has sustained by reason of defendants' infringement, together with interest and costs pursuant to 35 U.S.C. § 284;

F. Awarding plaintiff increased damages of three times the amount found or assessed by reason of the willful and deliberate nature of defendants' acts of infringement pursuant to 35 U.S.C. § 284;

G. Adjudging this to be an exceptional case and awarding plaintiff its attorney fees pursuant to 35 U.S.C. §285; and

H. Awarding to plaintiff such other and further relief that this Court may deem just and proper.

Respectfully submitted,

Dated: June 28, 2007

_____
Michael C. Smith
Carl R. Roth
THE ROTH LAW FIRM, P.C.
P.O. Box 876
Marshall, Texas 75671
Telephone: (903) 935-1665
Facsimile: (903) 935-1797
ms@rothfirm.com
cr@rothfirm.com


Of Counsel
John W. Osborne
Peter N. Fill
Richard Straussman
MORGAN & FINNEGAN, L.L.P.
Three World Financial Center
New York, NY 10281-2101
Telephone No.: (212) 415-8700
Facsimile No.: (212) 415-8701
JOsborne@MorganFinnegan.com
pfill@morganfinnegan.com
rstraussman@morganfinnegan.com

*Attorneys For Plaintiff*