# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

|  |  |  |
|---|---|---|
| AMERANTH, INC., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:07-CV-271-TJW-CE |
| | § | |
| MENUSOFT SYSTEMS CORPORATION | § | |
| and CASH REGISTER SALES & SERVICE | § | JURY DEMANDED |
| OF HOUSTON, INC. (dba CRS TEXAS) | § | |
| | § | |
| Defendants. | § | |
| | § | |

## JOINT FINAL PRE-TRIAL ORDER

This cause came before the court at a pre-trial management conference held on August 25,

2010 pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure.

## A.    COUNSEL FOR THE PARTIES

Plaintiff:

Michael C. Smith, SIEBMAN, BURG, PHILLIPS & SMITH LLP, 113 East Austin Street, Marshall,

TX 75670

John W. Osborne, Peter N. Fill, James W. Gould, Steven M. Purdy, Peter H. Noh, LOCKE

LORD BISSELL & LIDDELL LLP,  3 World Financial Center, New York, NY 10281.

Defendants:

Otis W. Carroll and Deborah J. Race, IRELAND, CARROLL & KELLEY, PC, 6101 S. Broadway,

Suite 500, Tyler, TX. 75703

Marc L. Delflache, Richard S. Zembek, Dustin M. Mauck and Thomas C. Cecil, FULBRIGHT

& JAWORSKI L.L.P., 2200 Ross Avenue, Suite 2800, Dallas, TX. 75201

1

**B.**      **STATEMENT OF JURISDICTION**

This Court has subject matter jurisdiction of this matter by virtue of 35 U.S.C. § 1331 and

§ 1338.  Jurisdiction is not contested by any party.  The parties do not dispute that the Court has

personal jurisdiction.

**C.**      **NATURE OF ACTION**

This is a patent infringement action.  The patents-in-suit are three related patents: U.S. Patent

No. 6,384,850 entitled "Information Management and Synchronous Communications System with

Menu Generation" ("the '850 Patent"); U.S. Patent No. 6,871,325 entitled "Information Management

and Synchronous Communications System with Menu Generation" ("the '325 Patent"); and U.S.

Patent No. 6,982,733 entitled "Information Management and Synchronous Communications System

with Menu Generation, and Handwriting and Voice Modification of Orders" ("the '733 Patent").

Collectively, the '850 Patent, '325 Patent and '733 Patent are referred to as "the Patents-in-Suit."

**D.**      **CONTENTIONS OF THE PARTIES**

       **Plaintiff's statement of contentions to be read to the jury**

This is a patent infringement lawsuit.  The plaintiff, Ameranth, Incorporated, contends that the

defendants, Menusoft Systems Corporation and Cash Register Sales and Service of Houston,

Incorporated, have infringed United States Patent No. 6,384,850, United States Patent No. 6,871,325,

and United States Patent No. 6,982,733.  Ameranth's patents are sometimes called the "'850 patent,"

the "'325 patent," and the "'733 patent," respectively.  Together, they are sometimes called the

"patents-in-suit."

The '850 and '325 patents are entitled "Information Management and Synchronous

Communications System with Menu Generation."  The '733 patent is entitled "Information

Management and Synchronous Communications System with Menu Generation, and Handwriting

and Voice Modification of Orders."  The claimed system teaches synchronous menu generation from

2

a central computer to wireless handheld devices or the Internet, for use primarily in the restaurant industry.  Ameranth contends that the Defendants have directly or indirectly infringed and continue to infringe the patents-in-suit by making, using, selling, and offering for sale Menusoft's Digital Dining standard Point Of Sale product and Multistore product.  Ameranth also contends that Defendants' infringement is willful and that it is entitled to both compensatory and enhanced damages caused by that willful infringement.  Ameranth further contends that it is entitled to an award of costs, pre- and post-judgment interest and attorneys' fees from Defendants.[1]

### Defendants' statement of contentions to be read to the jury

Defendants contend that the patent claims being asserted by the plaintiff in this lawsuit are invalid due to previously existing patents, publications, and products in the industry, including Plaintiff's own product and a prior version of Defendants' own previously existing Digital Dining product.

Defendants also contend that the '850, '325, and '733 Patents are invalid because Keith McNally failed to disclose the best mode for practicing the patented invention, and failed to enable the patented invention.

To the extent that any patent claim of the '850, '325, and '733 patents is found to be valid, Defendants contend that their Digital Dining standard Point of Sale and Multistore software products do not infringe any claim of the '850, '325, and '733 patents, either directly or indirectly.

To the extent that any patent claim is found to infringe, any such infringement was not willful.

Defendants finally contend that Ameranth is not entitled to any damages, compensatory or enhanced, for the alleged infringement of the '850, '325, and '733 patents.  Defendants further contend that they are entitled to an award of costs and attorneys' fess from Plaintiff.[2]

---

[1] This sentence refers to an award made by the Court and should not be read to the jury.
[2] This sentence refers to an award made by the Court and should not be read to the jury.

**E.      STIPULATIONS AND UNCONTESTED FACTS**

1.      Ameranth is a Delaware corporation having its principal place of business in San Diego, California.

2.      Menusoft is a Virginia corporation having its principal place of business in Springfield, Virginia.

3.      CRS Texas is a Texas corporation having its principal place of business in Houston, Texas.

4.      In this case, the parties do not dispute that this Court has personal jurisdiction over Ameranth, Menusoft and CRS Texas.

5.      In this case, the parties do not dispute that venue is proper in the United States District Court of the Eastern District of Texas, Marshall Division.

6.      Ameranth filed this lawsuit on June 28, 2007.

7.      The '850 patent was filed on September 21, 1999 and issued on May 7, 2002.

8.      Claims 1-8 and 11 of the '850 patent are claims for an information management and synchronous communications system.

9.      The '325 patent was filed on November 1, 2001 and issued on March 22, 2005.

10.     Claims 1-10 of the '325 patent are claims for an information management and synchronous communications system.

11.     The '733 patent was filed on November 1, 2001 and issued on January 3, 2006.

12.     Claims 1-3 of the '733 patent are claims for an information management and synchronous communications system.

13.     Keith McNally attended several trade shows in the 1996-99 timeframe, including the 1996 Western Restaurant Show, the 1996, 1998, and 1999 FSTEC shows, the 1997 and 1999 NRA

shows, the 1999 HITEC show, the 1999 World Gaming Show, and the 1999 International Hotel-Motel Show.

14.     For the purposes of this litigation, Ameranth does not make a claim of constructive notice of the Patents-in-Suit under 35 U.S.C. § 287.

15.     Ameranth provided actual notice of the Patents-in-Suit on January 16, 2007.

16.     The parties agree that the alleged damages period, if there are any damages, for this case begins on January 16, 2007 if the Patents-in Suit are found to be infringed by the Defendants and the Patents-in-Suit are found not to be invalid.

17.     A person having an ordinary level of skill would be an individual having a bachelors degree in either electrical engineering or computer science and two years of experience developing software for wireless applications.

18.     The parties agree that, prior to the first day of trial and during trial, each party shall provide notice no later than 7:00 p.m. prior to the first day of trial and each subsequent trial day: (1) a list of witnesses who are expected to be called to testify and the order in which they are expected to be called the next trial day; and (2) a copy of each demonstrative exhibit to be used with each such witness listed.  As examples, (1) by Monday at 7:00 p.m., a party shall provide notice of witnesses it expects to call, the order of those witnesses on Tuesday, and a copy of all demonstratives to be used with each such witness; and (2) by Sunday at 7:00 p.m., a party shall provide notice of  witnesses it expects to call, the order of those witnesses on Monday, and a copy of all demonstratives to be used with each such witness.

19.     Highlighted or enlarged exhibit pages, or portions of pages, shall not count as demonstratives unless the text has been changed.

20.     All documents that are created by the producing party and also produced by that same party are admissible provided that they are relevant and not unduly prejudicial under Federal Evidence Rule 403.

21.     The parties agree to meet and confer to try to resolve their objections to the other party's deposition designations and exhibits.

22.     The parties agree to meet and confer to try to resolve their objections to the other party's proposed jury instructions and verdict forms.

23.     The parties stipulate that each member of the jury may receive a notebook at the beginning of trial consisting of a list of the claim terms that have been construed by the Court, a clean copy of the '850 Patent, the '325 Patent, and the '733 Patent.[3]

24.     Except as provided for herein, nothing herein is intended to modify, impact or otherwise affect any party's right to object to the admissibility of evidence pursuant to the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or Titles 28 and 35 of the United States Code.

**F.     CONTESTED ISSUES OF FACT AND LAW**

<u>**AMERANTH'S CONTESTED ISSUES OF FACT AND LAW:**</u>

1.     Whether Ameranth has proven by a preponderance of the evidence that Defendants infringe, either directly or indirectly (contributory or inducement), any of Claims 1-8 or 11 of the '850 patent, either literally or under the doctrine of equivalents, by making, using, offering for sale or selling in the United States the Digital Dining standard Point Of Sale product.

2.     Whether Ameranth has proven by a preponderance of the evidence that Defendants infringe, either directly or indirectly (contributory or inducement), any of Claims 1-8 or 11 of the

---

[3] Defendants seek to include three (3) prior art references in the jury notebook.  Ameranth objects to this request.

'850 patent, either literally or under the doctrine of equivalents, by making, using, offering for sale or selling in the United States the Digital Dining Multistore product.

3.      Whether Ameranth has proven by a preponderance of the evidence that Defendants infringe, either directly or indirectly (contributory or inducement), any of Claims 1-10 of the '325 patent, either literally or under the doctrine of equivalents, by making, using, offering for sale or selling in the United States the Digital Dining standard Point Of Sale product.

4.      Whether Ameranth has proven by a preponderance of the evidence that Defendants infringe, either directly or indirectly (contributory or inducement), any of Claims 1-10 of the '325 patent, either literally or under the doctrine of equivalents, by making, using, offering for sale or selling in the United States the Digital Dining Multistore product.

5.      Whether Ameranth has proven by a preponderance of the evidence that Defendants infringe, either directly or indirectly (contributory or inducement), any of Claims 1-3 of the '733 patent, either literally or under the doctrine of equivalents, by making, using, offering for sale or selling in the United States the Digital Dining standard Point Of Sale product.

6.      Whether Ameranth has proven by a preponderance of the evidence that Defendants infringe, either directly or indirectly (contributory or inducement), any of Claims 1-3 of the '733 patent, either literally or under the doctrine of equivalents, by making, using, offering for sale or selling in the United States the Digital Dining Multistore product.

7.      Whether Ameranth has proven by clear and convincing evidence that Defendants' infringement of the asserted claims was willful.

8.      If liability is established, the extent to which Ameranth was damaged by Defendants' infringement and the amount of monetary damages adequate to compensate Ameranth for Defendants' infringement, including but not limited to damages against Menusoft based on the sales

of its dealers.  Ameranth reserves the right to seek supplemental damages for the period after the discovery cut-off in this case.

9.      Whether Defendants can establish by clear and convincing evidence that any of Claims 1-8 or 11 of the '850 patent are invalid for failure to comply with the enablement requirement of 35 U.S.C. § 112.

10.     Whether Defendants can establish by clear and convincing evidence that any of Claims 1-10 of the '325 patent are invalid for failure to comply with the enablement requirement of 35 U.S.C. § 112.

11.     Whether Defendants can establish by clear and convincing evidence that any of Claims 1-3 of the '733 patent are invalid for failure to comply with the enablement requirement of 35 U.S.C. § 112.

12.     Whether Defendants can establish by clear and convincing evidence that any of Claims 1-8 or 11 of the '850 patent are invalid for failure to comply with the "best mode" requirement of 35 U.S.C. § 112, ¶ 1.

13.     Whether Defendants can establish by clear and convincing evidence that any of Claims 1-10 of the '325 patent are invalid for failure to comply with the "best mode" requirement of 35 U.S.C. § 112, ¶ 1.

14.     Whether Defendants can establish by clear and convincing evidence that any of Claims 1-3 of the '733 patent are invalid for failure to comply with the "best mode" requirement of 35 U.S.C. § 112, ¶ 1.

15.     The scope and content of the prior art

16.     The differences between the prior art and the subject matter of each asserted claims.

17.     Whether and to what extent any secondary considerations of non-obviousness exist.

18.     Whether the secondary considerations of non-obviousness preclude a finding of obviousness.

19.     Whether Defendants have sold the Digital Dining standard Point Of Sale product in the United States and continue to sell this product in the United States.

20.     Whether Defendants have sold the Multistore product in the United States and continue to sell this product in the United States.

21.     Whether on January 16, 2007, Ameranth's outside counsel sent a letter to Menusoft stating that Ameranth believed Menusoft's products may infringe the Patents-in-Suit.

22.     Whether, if liability is found, Ameranth is entitled to an injunction and the scope of any such injunction.

23.     If Ameranth is not entitled to a permanent injunction, the royalty to be applied to infringing products post-judgment.

24.     If Ameranth has proven infringement of any valid and enforceable claim, what amount of damages is adequate to compensate for Defendants' past infringement.

25.     Whether Ameranth is entitled to enhanced damages, attorney fees, pre- and post-judgment interest, expenses, and costs under 35 U.S.C. §§ 284 and 285, and, if so, the amount Ameranth is entitled to.

26.     Whether Defendants can establish by clear and convincing evidence that U.S. Patent No. 5,845,263 to Camaisa, et al., entitled "Interactive Visual Ordering System" teaches each an every limitation of any of Claims 1-8 or 11 of the '850 patent, enables a person having ordinary skill in the art to practice those claims, and therefore whether any of Claims 1-8 and 11 of the '850 patent are invalid under 35 U.S.C. § 102 for anticipation.

27.     Whether Defendants can establish by clear and convincing evidence that U.S. Patent No. 5,845,263 to Camaisa, et al., entitled "Interactive Visual Ordering System" teaches each an every

limitation of any of Claims 1-10 of the '325 patent, enables a person having ordinary skill in the art to practice those claims, and therefore whether any of Claims 1-10 of the '325 patent are invalid under 35 U.S.C. § 102 for anticipation.

28.     Whether Defendants can establish by clear and convincing evidence that U.S. Patent No. 5,845,263 to Camaisa, et al., entitled "Interactive Visual Ordering System" teaches each an every limitation of any of Claims 1-3 of the '733 patent, enables a person having ordinary skill in the art to practice those claims, and therefore whether any of Claims 1-3 of the '733 patent are invalid under 35 U.S.C. § 102 for anticipation.

29.     Whether Defendants can establish by clear and convincing evidence that the subject matter as a whole of any of Claims 1-8 and 11 of the '850 patent would have been obvious to a person having ordinary skill in the art as of the invention date for the '850 patent and therefore whether any of Claims 1-8 and 11 of the '850 patent are invalid under 35 U.S.C. § 103 for obviousness.

30.     Whether Defendants can establish by clear and convincing evidence that the subject matter as a whole of any of Claims 1-10 of the '325 patent would have been obvious to a person having ordinary skill in the art as of the invention date for the '325 patent and therefore whether any of Claims 1-10 of the '325 patent are invalid under 35 U.S.C. § 103 for obviousness.

31.     Whether Defendants can establish by clear and convincing evidence that the subject matter as a whole of any of Claims 1-3 of the '733 patent would have been obvious to a person having ordinary skill in the art as of the invention date for the '733 patent and therefore whether any of Claims 1-3 of the '733 patent are invalid under 35 U.S.C. § 103 for obviousness.

32.     Whether Defendants have proven to the Court by clear and convincing evidence that the '850 patent is unenforceable.

33.     Whether Defendants have proven to the Court by clear and convincing evidence that the '325 patent is unenforceable.

34.     Whether Defendants have proven to the Court by clear and convincing evidence that the '733 patent is unenforceable.

35.     Whether Defendants are entitled to assert a license defense, without pleading such as an affirmative defense or disclosing said defense in the time period defined by the Docket Control Order.

36.     Whether Defendants are entitled to assert an invalidity defense regarding lack of enablement under 35 U.S.C. § 112, having not disclosed this defense in accordance with Local Patent Rule 3-3(d) or in response to discovery requests before the close of discovery in this case.

## DEFENDANTS' CONTESTED ISSUES OF FACT AND LAW

### *Non-Infringement*

1.     Whether Ameranth has proven that Defendants infringe claims 1-8 and 11 of the '850 Patent.

2.     Whether Ameranth has proven that any version of the Digital Dining products have infringed any valid and enforceable claim of the '850 Patent.

3.     Whether Ameranth has proven that any version of Digital Dining in combination with third party products and software have infringed any valid and enforceable claim of the '850 Patent.

4.     Whether Ameranth has proven that Menusoft has induced infringement of the '850 Patent by selling the accused Digital Dining products to any customer in the United States.

5.     Whether Ameranth has proven that CRS has induced infringement of the '850 Patent by selling the accused Digital Dining products to any customer in the United States.

6.     Whether Ameranth has proven that Menusoft has contributed to infringement of the '850 Patent by selling the accused Digital Dining products to any customer in the United States.

7.      Whether Ameranth has proven that CRS has contributed to the infringement of the '850 Patent by selling the accused Digital Dining products to any customer in the United States.

8.      Whether Ameranth has proven that Menusoft has the specific intent required to prove that it actively induces infringement of the Patents-in-Suit.

9.      Whether Ameranth has proven that CRS has the specific intent required to prove that it actively induces infringement of the Patents-in-Suit

10.     Whether Ameranth has proven that the Digital Dining products do not have substantial non-infringing uses under 35 U.S.C. 271(c).

11.     Whether Ameranth has proven that Defendants infringe claims 1-10 of the '325 Patent.

12.     Whether Ameranth has proven that any version of the Digital Dining products has infringed any valid and enforceable claim of the '325 Patent.

13.     Whether Ameranth has proven that any version of Digital Dining in combination with third party products and software have infringed any valid and enforceable claim of the '325 Patent.

14.     Whether Ameranth has proven that Menusoft has induced infringement of the '325 Patent by selling the accused Digital Dining products to any customer in the United States.

15.     Whether Ameranth has proven that CRS has induced infringement of the '325 Patent by selling the accused Digital Dining products to any customer in the United States.

16.     Whether Ameranth has proven that Menusoft has contributed to infringement of the '325 Patent by selling the accused Digital Dining products to any customer in the United States.

17.     Whether Ameranth has proven that CRS has contributed to infringement of the '325 Patent by selling the accused Digital Dining products to any customer in the United States.

18.     Whether Ameranth has proven that Defendants infringe claims 1-3 of the '733 Patent.

19.     Whether Ameranth has proven that any version of the Digital Dining products have infringed any valid and enforceable claim of the '733 Patent.

20.     Whether Ameranth has proven that any version of Digital Dining in combination with third party products and software have infringed any valid and enforceable claim of the '733 Patent.

21.     Whether Ameranth has proven that Menusoft has induced infringement of the '733 Patent by selling the accused Digital Dining products to any customer in the United States.

22.     Whether Ameranth has proven that CRS has induced infringement of the '733 Patent by selling the accused Digital Dining products to any customer in the United States.

23.     Whether Ameranth has proven that Menusoft has contributed to infringement of the '733 Patent by selling the accused Digital Dining products to any customer in the United States.

24.     Whether Ameranth has proven that CRS has contributed to infringement of the '733 Patent by selling the accused Digital Dining products to any customer in the United States.

25.     Whether Ameranth has proven that any alleged infringement by Menusoft was willful.

26.     Whether Ameranth has proven that any alleged infringement by CRS was willful.

27.     Whether Menusoft is licensed for the Patents-in-Suit through a sublicense from The Magellan Network related to on-line reservation and on-line ordering.

28.     Whether Menusoft received a sublicense on January 27, 2010 from The Magellan Network related to on-line reservations and on-line ordering under the Patents-in-Suit.

### *Invalidity*

29.     Whether Defendants have proven that claims 1-8 and 11 of the '850 Patent are invalid as anticipated under Section 102 of the Patent Act.

30.     Whether Defendants have proven that claims 1-10 of the '325 Patent are invalid as anticipated under Section 102 of the Patent Act.

31.     Whether Defendants have proven that claims 1-3 of the '733 Patent are invalid as anticipated under Section 102 of the Patent Act.

32.     Whether Defendants have proven that claims 1-8 and 11 of the '850 Patent are invalid as obvious under Section 103 of the Patent Act.

33.     Whether Defendants have proven that claims 1-10 of the '325 Patent are invalid as obvious under Section 103 of the Patent Act.

34.     Whether Defendants have proven that claims 1-3 of the '733 Patent are invalid as obvious under Section 103 of the Patent Act.

35.     Whether Defendants have proven that claims 1-8 and 11 of the '850 Patent are invalid under Section 112 ¶ 1 of the Patent Act.

36.     Whether Defendants have proven that claims 1-10 of the '325 Patent are invalid under Section 112 ¶ 1 of the Patent Act.

37.     Whether Defendants have proven that claims 1-3 of the '733 Patent are invalid under Section 112 ¶ 1 of the Patent Act.

38.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 102 as anticipated by U.S. Patent No. 5,845,263 to Camaisa et al. ("Camaisa") issued on December 1, 1998.

39.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious in view of U.S. Patent 5,845,263 to Camaisa alone, or in combination with U.S. Patent No. 5,912,743 to Kinebuchi et al. ("Kinebuchi") issued on June 15, 1999, or the Micros® Systems, Inc. 3700 HMS Version 2.00 User Manual.

40.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious in view of the Squirrel Restaurant Management System available at least as early as May 8, 1999 alone, or in combination with U.S. Patent No. 6,300,947 to Kanevsky ("Kanevsky") issued on

14

October 9, 2001, Kinebuchi, Camaisa, or the Micros® Systems, Inc. 3700 HMS Version 2.00 User Manual.

41.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious in view of the MICROS® Systems, Inc. 8700 HMS Version 2.10 User's Manual (1997) alone, or in combination with Kanevsky, Kinebuchi, Camaisa, or the Micros® Systems, Inc. 3700 HMS Version 2.00 User Manual.

42.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious in view of the MICROS® 8700 HMS alone, or in combination with Kanevsky, Kinebuchi, Camaisa, or the Micros® Systems, Inc. 3700 HMS Version 2.00 User Manual.

43.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious in view of the 1997 Windows Version of Digital Dining alone, or in combination with Kinebuchi, Camaisa, or the Micros® Systems, Inc. 3700 HMS Version 2.00 User Manual.

44.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious in view of either the DIGITAL DINING FOR WINDOWS USER'S GUIDE (1997) or DIGITAL DINING FOR WINDOWS SETUP GUIDE (1997) alone, or in combination with Kinebuchi, Camaisa, or the Micros® Systems, Inc. 3700 HMS Version 2.00 User Manual.

45.     Whether the asserted claims of the Patents-in-Suit are invalid under 35 U.S.C. § 103 as obvious in view of the Ameranth Transpad SL device as demonstrated with POS applications and offered for sale alone, or in combination with Kanevsky, Kinebuchi, Camaisa, or the Micros® Systems, Inc. 3700 HMS Version 2.00 User Manual.

46.     Whether the Patents-in-Suit are invalid under 35 U.S.C. § 112 because the inventors, including Keith McNally, did not disclose the best mode for practicing the claimed invention – the Symbol 2700 handheld device.

47.     Whether the Patents-in-Suit are invalid under 35 U.S.C. § 112 for lack of enablement.

### *Inequitable Conduct*

48.     Whether Defendants have proven that the '850 Patent is unenforceable because it was procured through inequitable conduct committed by Keith McNally during its prosecution.

49.     Whether Defendants have proven that the '325 Patent is unenforceable because it was procured through inequitable conduct committed by Keith McNally during its prosecution.

50.     Whether Defendants have proven that the '733 Patent is unenforceable because it was procured through inequitable conduct committed by Keith McNally during its prosecution.

51.     Whether Keith McNally, an inventor of all the Patents-in-Suit, knew of the Ameranth Transpad SL device as demonstrated with POS applications and offered for sale, a material prior art system that was offered for sale and publicly used, and with the intent to deceive intentionally failed to disclose this prior art system to the United States Patent and Trademark Office during prosecution of the Patents-in-Suit.

52.     Whether Keith McNally, an inventor of all the Patents-in-Suit, knew of the Windows Version of Digital Dining, a material prior art system, and with the intent to deceive intentionally failed to disclose this prior art system to the United States Patent and Trademark Office during prosecution of the Patents-in-Suit.

53.     Whether Keith McNally, an inventor of all the Patents-in-Suit, knew of the hospitality products of Micros Systems, Inc., a material prior art system, and with the intent to deceive intentionally failed to disclose this prior art system to the United States Patent and Trademark Office during prosecution of the Patents-in-Suit.

54.     Whether Keith McNally, an inventor of all the Patents-in-Suit, knew of the Squirrel Restaurant Management System, a material prior art system, and with the intent to deceive intentionally failed to disclose this prior art system to the United States Patent and Trademark Office during prosecution of the Patents-in-Suit.

55.     Whether Keith McNally, an inventor of all the Patents-in-Suit, knew of the best mode for practicing the claim invention, the Symbol 2700 handheld device, and with the intent to deceive intentionally failed to disclose this device to the United States Patent and Trademark Office during prosecution of the Patents-in-Suit.

56.     Whether Ameranth admits in its answer that Keith McNally had a duty to disclose to the United States Patent and Trademark Office information in his possession material to the patentability of the claimed inventions of the '850 patent, the '325 patent, and the '733 patent.

57.     Whether Ameranth admits in its answer that Keith McNally had a duty to disclose to the United States Patent and Trademark Office the best mode of practicing the claimed inventions of the Patents-in-Suit.

### *Ameranth and Keith McNally*

58.     Whether Ameranth admits in its answer that beginning in 1997 Ameranth publicly displayed a working prototype of the Transpad™ 386 PC handheld computer.

59.     Whether Ameranth admits in its answer that before September 1998 Ameranth offered for sale a prototype Transpad™ 386 PC handheld computer.

60.     Whether Ameranth admits in its answer that in January of 1997 Keith McNally offered for sale a conceptual 486 Transpad computer product.

61.     Whether Ameranth admits in its answer that Keith McNally offered for sale a conceptual 486 Transpad computer product to McDonald's.

62.     Whether Ameranth admits in its answer that the 486 Transpad computer product was described as a potential hardware component of the Ameranth 21st Century Restaurant products.

63.     Whether Ameranth admits in its answer that Keith McNally was in possession of documents that described the prototype and conceptual Transpad products during the prosecution of the Asserted Patents.

64.     Whether Ameranth admits in its answer that Ameranth planned to market a future conceptual software definable radio in the hospitality industry.

65.     Whether Ameranth admits in its answer that the Patents-in-Suit do not disclose the 2700 Symbol device.

66.     Whether Ameranth admits in its answer that neither Ameranth nor Keith McNally submitted an information disclosure statement during prosecution of the '850 Patent.

67.     Whether Ameranth admits in its answer that Ameranth forged strategic alliances with Symbol Technologies, JTECH, Comtec, Microsoft, and number of large POS companies.

68.     Whether Ameranth admits in its answer that on November 1, 1999, Ameranth issued a press release stating that Ameranth wireless products coupled with Squirrel POS solutions will uniquely meet the market demand for 21st Century Restaurant products well into the new millennium.

69.     Whether Ameranth admits in its answer that Ameranth acknowledges a major move from keyboard based point of sale systems and DOS based point of sale systems and in some instances [UNIX] based point of sales systems to the very heavily graphically intensive based point-of-sale systems that were largely built on Windows 95, then ultimately later versions of Windows.

70.     Whether Ameranth admits in its answer that  there was a Micros device that was known in the marketplace in the 1990s.  Keith McNally learned more about this Micros device in his meetings with Ed Rothenberg of Micros in 1999 and 2000.

71.     Whether Ameranth admits in its answer that that its products coupled with Squirrel POS Solutions will uniquely meet the considerable market demand for 21st Century Restaurant products well into the new millennium.

72.     Whether Ameranth admits in its answer that that Keith McNally believed that the Symbol 2700 has a better data rate than some other handhelds, was more reliable than some other

handhelds, has good battery life, and that battery life was important to the hospitality industry for business reasons in 1999.

### *Remedies*

73.     Whether, if Defendants are found to infringe a valid and enforceable patent, Ameranth has proven that it is entitled to damages consisting of a reasonable royalty.

74.     Whether, if Defendants are found to infringe a valid and enforceable patent, the royalty base in any reasonable royalty damages model should be limited to handheld terminal licenses.

75.     Whether if Defendants are found to infringe a valid and enforceable patent, Ameranth is entitled to two royalty fees for the sale of the same Digital Dining product.

76.     Whether, if Defendants are found to infringe a valid and enforceable patent, Ameranth is entitled to future damages for future upgrades of the Digital Dining product.

77.     Whether, if Defendants are found to infringe a valid and enforceable patent, Ameranth has proven that it is entitled to enhanced damages.

78.     Whether, if Defendants are found to infringe a valid and enforceable patent, Ameranth is entitled to seek supplemental damages for the period after discovery cut-off.

79.     Whether, if Defendants are found to infringe a valid and enforceable patent, Ameranth has proven that it is entitled to attorneys' fees.

### *Equitable Relief*

80.     Whether, if Menusoft  is found to infringe a valid and enforceable claim of the Patents-in Suit , Ameranth has proven that it is entitled to a permanent injunction to enjoin Menusoft from the manufacture, use, or sale of any Digital Dining product, and the scope of any such injunction..

81.     Whether, if CRS  is found to infringe a valid and enforceable claim of the Patents-in Suit , Ameranth has proven that it is entitled to a permanent injunction to enjoin CRS from the manufacture, use, or sale of any Digital Dining product, and the scope of any such injunction.

82.     Whether Ameranth can prove that it competes in the market place with Menusoft or CRS and is entitled to injunctive relief.

83.     Whether Ameranth can prove that it has suffered irreparable injury in view of the alleged infringement by Menusoft.

84.     Whether Ameranth can prove that it has suffered irreparable injury in view of the alleged infringement by CRS.

85.     Whether Ameranth can prove that there are no adequate remedies at law for the alleged infringement by Menusoft.

86.     Whether Ameranth can prove that there are no adequate remedies at law for the alleged infringement by CRS.

87.     Whether Ameranth can prove that the balance of hardships favors a permanent injunction for the alleged infringement by Menusoft.

88.     Whether Ameranth can prove that the balance of hardships favors a permanent injunction for the alleged infringement by CRS.

89.     Whether Ameranth can prove that the public interest would not be disserved by a permanent injunction against Menusoft.

90.     Whether Ameranth can prove that the public interest would not be disserved by a permanent injunction against CRS.

### *Relief Awarded to Defendants*

91.     Whether, if either or both Defendants are found not to infringe a valid and enforceable claim, either or both Defendants are entitled to an award of all their attorneys fees, costs and expenses.

92.     Whether, if any or all asserted claims are found to be either invalid or unenforceable , or both, Defendants are entitled to an award of all their attorneys fees, costs and expenses.

93.     Whether this is an exceptional case entitling Defendants to an award of all their attorneys fees, costs and expenses (and consultant fees and costs) pursuant to 35 U.S.C. §§ 284 and 285.

94.     Whether, if inequitable conduct of Ameranth or Keith McNally or others associated with Ameranth is found, Defendants are entitled to all of their attorney fees, costs and expenses.

95.     Whether, if Defendants are found not to infringe a valid and enforceable claim or if any or all asserted claims are found to be either invalid or unenforceable , or both, Defendants are entitled to an awarded of all their attorneys fees, costs and expenses.

96.     Whether the fact Plaintiff filed a new suit before this court on August 13, 2010, C.A. 2:10-cv-00294-TJW –CE, against the Defendants for infringement of the exact same patents and the exact same accused product, is abusive, demonstrates the litigious nature of Plaintiff, and supports a finding that Defendants are entitled to an awarded of all its attorneys fees, costs and expenses based on the conduct of Plaintiff.


**G.    LIST OF WITNESSES**

1.     Ameranth's witness list is attached as Exhibit A.  Ameranth reserves the right to amend its witness list in view of Defendants' witness list and/or the evidence presented at trial.

2.      Defendants' witness list is attached as Exhibit B.  Defendants reserve the right to amend their witness list in view of Ameranth's witness list and/or the evidence presented at trial.

3.      Ameranth's deposition designations are attached as Exhibit C.

4.      Ameranth's objections to Defendants' deposition designations and counter designations are attached as Exhibit D.

5.      Defendants' deposition designations are attached as Exhibit E.

6.      Defendants' objections to Ameranth's deposition designations and counter designations are attached as Exhibit F.

**H.    LIST OF EXHIBITS**

1.      Ameranth's trial exhibit list is attached as Exhibit G.  Ameranth reserves the right to amend its exhibit list in view of Defendants' exhibit list and/or evidence presented at trial.

2.      Defendants' objections to Ameranth's trial exhibit list are attached as Exhibit H.

3.      Defendants' trial exhibit list is attached as Exhibit I.  Defendants reserve the right to amend their exhibit list in view of Ameranth's exhibit list and/or evidence presented at trial.

4.      Ameranth's objections to Defendants' trial exhibit list are attached as Exhibit J.

5.      Ameranth's proposed Preliminary Jury Charge and proposed Final Jury Charge and Jury Instructions are attached as Exhibit K.  Ameranth reserves the right to amend its proposed jury charge and jury instructions.

6.      Defendants' proposed Preliminary Jury Charge and proposed Final Jury Charge and Jury Instructions are attached as Exhibit L.  Defendants reserve the right to amend their proposed jury charge and jury instructions.

7.      Ameranth's proposed verdict form is attached as Exhibit M.  Ameranth reserves the right to amend its verdict form.

8.      Defendants' proposed verdict form is attached as Exhibit N.  Defendants reserve the right to amend their verdict form.

## I.  LIST OF ANY PENDING MOTIONS

As of August 20, 2010, the following motions are pending:

- Defendants' Motion for Summary Judgment of Non-Infringement (Dkt. No. 136),

- Defendants' Motion for Summary Judgment of Non-Infringement (Dkt. No. 141),

- Defendants' Motion for Summary Judgment of No Indirect Infringement (Dkt. No. 142),

- Defendants' Motion to Strike Newly Asserted Claims (Dkt. No. 144),

- Defendants' Motion to Exclude Opinions of Plaintiff's Expert Dr. Shamos (Dkt. No. 154),

- Defendants' Motion to Exclude Opinions of Plaintiff's Expert Dr. Kennedy (Dkt. No. 155),

- Ameranth's Motion to Exclude Opinions of Defendants' Expert Dr. Acampora (Dkt. No. 156), and

- Ameranth's Motion to Exclude Opinions of Defendants' Expert Dr. Becker (Dkt. No. 160).

- Defendants' Motions *in Limine* (Dkt. No. 186).

- Ameranth's Motions *in Limine* (Dkt. Nos. 187, 188, 189, 190 and 191).

**J.      PROBABLE LENGTH OF TRIAL**

The parties cannot agree on the probable length of trial.  Plaintiff believes that exclusive of jury selection and opening, interim and closing statements, the trial will take thirty (30) hours, with each side having fifteen (15) hours for case presentation.  Defendants believe that exclusive of jury selection and opening, interim and closing statements, the trial will take (24) hours, with each side having (12) hours for case presentation.

**K.      MANAGEMENT CONFERENCE LIMITATIONS**

None.

**L.      CERTIFICATIONS**

The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

(1)      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

(2)      Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with and not altered by agreement or otherwise;

(3)      Except as otherwise agreed or ordered, Counsel for each party will provide the following certification when their respective Exhibit Lists are filed: Each exhibit (excluding demonstratives) in the List of Exhibits:

(a)      is in existence;

(b)      is numbered; and

(c)      has been disclosed and shown to opposing counsel.

Approved as to form and substance:

By: _____ /s/ Michael C. Smith _____          _____ /s/ Marc L. Delflache _____
Michael C. Smith                                 Marc L. Delflache
State Bar Number 18650410 102000                 Texas Bar No. 05725650
Email: michaelsmith@siebman.com                  FULBRIGHT & JAWORSKI L.L.P.
Siebman, Burg, Phillips & Smith, L.L.P.          2200 Ross Avenue, Suite 2800
113 East Austin Street                           Dallas, TX 75201-2784
Marshall, TX 75670                               Telephone: (214) 855-8000
(903) 938-8900 – Telephone                       Facsimile: (214) 855-8200
(972) 767-4620 – Facsímile                       Email: mdelflache@fulbright.com

John W. Osborne                                  Richard S. Zembek
josborne@lockelord.com                           Texas Bar No. 00797726
Peter N. Fill                                    FULBRIGHT & JAWORSKI L.L.P.
pfill@lockelord.com                              Fulbright Tower
James L. Gould                                   1301 McKinney , Suite 5100
jgould@lockelord.com                             Houston, TX 77010
Steven M. Purdy                                  Telephone: (713) 651-5151
spurdy@lockelord.com                             Facsimile: (713) 541-5246
Peter H. Noh                                     Email: rzembek@fulbright.com
pnoh@lockelord.com
Locke Lord Bissell & Liddell LLP                 Otis W. Carroll
3 World Financial Center                         Texas Bar. No. 03895700
New York, NY 10281-2101                          IRELAND, CARROLL & KELLEY, PC
(212) 415-8600 – Telephone                       6101 S. Broadway, Suite 500
(212) 303-2754 – Telecopier                      Tyler, TX 75703
                                                 Telephone: (903) 561-1600
**Counsel for Plaintiff**                        Facsimile: (903) 581-1071
**AMERANTH, INC.**                               Email: otiscarroll@icklaw.com

                                                 **Counsel for Defendant**
                                                 **MENUSOFT SYSTEMS CORP. & CASH**
                                                 **REGISTER SALES & SERVICE OF**
                                                 **HOUSTON, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) this 20th day of August, 2010.  Any other counsel of

record will be served by facsimile transmission and/or first class mail.


*/s/ Michael C. Smith*
Michael C. Smith